Good morning. May it please the Court, my name is Rosemary Sherman and I represent Ida Pryor, the plaintiff in this case. There's two issues which I'd like to focus on this morning. The first has to do with the ALJ's failure to follow the mandatory provisions of the Social Security rulings. In particular, the judge's failure to comply with a ruling that pertains to an individual's ability to perform their past relevant work. The second issue I'd like to address is the judge's discounting of all of the evidence about Mrs. Pryor's mental impairments. In particular, the commissioner's own doctor's limitations, which are identified in the record. With respect to the first issue on the Social Security rulings, in particular, Social Security ruling 8262 requires the ALJ to conduct a function-by-function analysis of a person's past relevant work. The ruling states that the decision, quote, must contain among the findings the following specific findings of fact. And the second is a finding of fact as to the physical and mental demands of the past job or occupation. In this case, the judge decides that Mrs. Pryor is capable of performing her past work as an electronic assembler, but he never, never at all looks at what are the physical demands of that job and what are the mental demands of that job. This Court ruled in Civil Lay that if an ALJ ignores the requirements of SSR 8262, reversible legal error has occurred. The second issue which I'd like to address is the judge's persistent discounting of almost all the medical evidence of depression. In particular, the most glaring error, in our opinion, is the judge's failure to examine all the limitations which were identified by the Commissioner's own doctors. The record at pages 189 to 90, 187 and 207 identify the fact that Mrs. Pryor is moderately limited in the ability to maintain attention, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal work day and a work week without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods. And almost most importantly, the Commissioner's own doctors found that Mrs. Pryor often has deficiencies in concentration, persistence or pace, which results in a failure to timely complete tasks. After we submitted the briefs in this case, this Court decided Ramirez v. Barnhart, in which this Court held that reversible error occurs when an administrative law judge does not put in the hypothetical to the vocational expert, that a claimant often has deficiencies in concentration, persistence and pace. So basically our position is that the ALJ's decision to ignore all these limitations that his own doctors identified constitutes error. In addition to the case of Ramirez, I would just direct the Court to the Social Security ruling 96-6P. That ruling, which is cited in our briefs, indicates that an NALJ must not ignore the opinions of the Commissioner's own doctors, and the ALJ must explain the weight given to these opinions. That's all I have to say to the Court. We'll hear from the government unless there's no further questions right now. Good morning, Your Honors. I'm Jeffrey Baird, representing the Commissioner of Social Security. In response to the points that my opponent has just raised, the vocational expert relied somewhat on the Dictionary of Occupational Titles to assess the requirements of the electronics assembly job, found that the plaintiff had done it for 30 years, and so had met the time it takes to learn, which I think is SVP4, something like six months. So she did apparently learn it. She described it herself in the record. She said it involved lifting 10 pounds, taking the computers off of the packing line, and then putting in some effort at figuring out what was going on with the computer. That was her assembly job as she described it. Again, the fact she had done it for over 30 years suggests that she could do it, and she had mastered any mental activities that were required in that. The question raised is she obviously, she might be able to do it, but could she do it as employable work? I see. Because Due to her lack of attention and concern about whether she would actually be able to attend work on a consistent basis. So it's less physical, but it's the mental question. Right. That brings us to the second point of the plaintiff, the often argument and the moderate limitations. These are aspects of listings analysis, step three, and also step two, severity. And the question is, how does the ALJ resolve the listings level? Well, moderate and often are not listings level. They do indicate severity. They indicate severe mental impairments, but not listings level. Having done that, under SSR 96-8P, the ALJ has to fashion an RFC assessment and put terms in layman's language that he can pose to the vocational expert. So using the word often in a hypothetical question, for example, would be inappropriate because it's a term of art for the listings under 96-8P. What the ALJ needs to do is figure out what are the sort of practical ramifications of those broader statements of moderate and often. Here the ALJ relied on Dr. Culkin's to find that the plaintiff was capable of simple and routine work. In fact, Dr. Culkin's, the examining psychologist, even recommended going back to the Electronics Assembly. He said she clearly has skills from that. He mentioned that as a possibility. So the ALJ relied on substantial evidence from Dr. Culkin's to fashion the more practical ramifications of what the claimant could do. Is that another way of saying that the ALJ had already discounted some of her testimony on that of her doctors with respect to the depression and, therefore, you didn't ñ in your view, you didn't need to put that into the hypothetical? Well, the ALJ did go through and discount in the hearing decision at great length, for example, the opinions of Dr. Price, who had agreed to intercede on behalf of the claimant and often had very moderate, very mild findings, but then said due to her financial stress and her social stressors, he found her unable to work. The ALJ gave specific and legitimate reasons to reject Dr. Price. For one thing, Dr. Price was under the impression that she wasn't smoking marijuana or didn't know if she was smoking marijuana, yet we know her urinalysis was positive when she was sort of caught red-handed by Dr. Domash and she admitted that she smokes And that's something that Dr. Price was unaware of, and it might have affected mood or it might have affected motivation. Also, he seemed to think that the stroke of record was recent. He was writing in 2000 and 2001, and the stroke was alleged to be in 1999, but even Dr. Bond, examining the Doppler studies and the CAT scans, said there is an old stroke that probably happened in 1991. If so, she worked through that, right? She worked after that stroke, probably when the sequelae were worse, but she was able to adapt to her job again as the electronics assembler and continue working. That said, the vocational expert did give a good explanation of other jobs that a person like the claimant might perform in the national economy, an alternative Step 5 finding. It took a lot of different limitations and a lot of different hypothetical questions, but at the end of the day, I think I added it up. It looked like there was 150,000 representative jobs nationally that wouldn't involve machinery, that wouldn't involve hazards, that would allow a sit-stand option, that were fundamentally sedentary jobs, the ability to move around as needed. That being so, the commissioner met the burden at Step 5. Thank you, Your Honor. Thank you. Mr. Sherman. If I could briefly respond to a few of my colleagues' comments. First of all, counsel reiterated that the vocational expert relied upon the dictionary of occupational titles and that the claimant described what she did in her former job and that that's sufficient in the record to establish what her past relevant work was. The plaintiff's position is clearly it's not, and ALJ is required to follow the Social Security rulings. The ruling says the judge must put in his opinion a description of what the physical requirements were and what the mental requirements were for the past relevant work. It doesn't matter what's in the record here, there, and everywhere. The ruling which is binding says you have to put it in the decision. Over and over and over again, the ALJs do not follow that ruling. With respect to the second point, counsel said that basically it's inappropriate to put in a hypothetical that a claimant often has deficiencies in concentration, persistence, and pace. That argument was clearly rejected by this Court in Ramirez. Ramirez acknowledged that argument but said, nope, if someone often has those deficiencies, it needs to go in the hypothetical. Third, with respect to Dr. Calkins' report, the plaintiff, I don't read his opinion as saying that she could clearly return to her past relevant work. Dr. Calkins assigned a global assessment functioning of 40 to 55, which is extremely low, and generally indicates disability. He did, although at the same time say that the plaintiff may need simple, straightforward work. Once again, since we don't know what all the mental and physical requirements of plaintiff's past relevant work are, we don't know if it's simple, straightforward work. Presumably it wasn't because the past relevant work is semi-skilled work and not unskilled work. In conclusion, I'd just like to say that the ALJ didn't consider the combined effects of all the claimant's impairments in this case. It didn't consider all the evidence. Mrs. Pryor tried to go back to work in March of 2000, and she was fired because she was too slow. It's totally consistent with a claimant who often has deficiencies of concentration, persistence and pace. In addition, she has diabetes. That's pretty much under control, but the doctors uniformly agree her high blood pressure is way out of control. She's to avoid pressure-type situations. She has migraines, which she testified can occur for up to six days at a time. She had a stroke either in 1991 or 1999. It's sort of irrelevant. She still had left-sided numbness, and none of the doctors really questioned that. Everyone seemed to recognize, yes, she did have left-sided numbness. I don't know why it developed in the year 2000 or in the year 1999. But the doctors certainly didn't question that. Based on all her different impairments, and in particular based upon the limitations identified by the commissioners on doctors, the plaintiff would ask that you reverse the ALJ's decision and remand this case for payment of benefits based on the fact that she cannot work for eight hours a day, five days a week at a job such as an assembly job that she previously did. Thank you very much. Thank you.
judges: Hug, Thompson, McKeown